**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**INTELLISHOP, LLC,**

Plaintiff,

v.

**UNITED STATES SMALL BUSINESS ADMINISTRATION, et al.,**

Defendants.

CASE NO. 3:23 CV 1377

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

Pending before the Court is Defendants' Motion for Summary Judgment. (Doc. 20). Plaintiff IntelliShop, LLC opposed (Doc. 24), and simultaneously filed a Motion for Leave to Amend (Doc. 25). Both Motions are now fully decisional. *See* Docs. 28, 29, 31. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702. For the reasons stated below, the Court denies Plaintiff's Motion to Amend and grants Defendants' Motion for Summary Judgment.

## BACKGROUND

As the COVID-19 pandemic raged, Congress enacted a sweeping stimulus package, styled as the Coronavirus Aid, Relief, and Economic Security Act, or the "CARES" Act, designed to deliver roughly $2.2 trillion in relief to the American economy. *See* 15 U.S.C. § 9001 *et seq.* Congress directed a large portion of this stimulus package towards small businesses through the Paycheck Protection Program ("PPP"). *See* 15 U.S.C. § 636(a). As is relevant to the present dispute, the PPP allowed small businesses such as Plaintiff to obtain from private lenders a "covered" loan to satisfy their qualifying "payroll costs." *Id.* at § 636(a)(36)(A). The Small

Business Administration ("SBA") would then offer forgiveness for such loans subject to certain conditions, including that the loaned funds were, in fact, used to cover qualifying "payroll costs." *See id.* at § 636m.

On April 1, 2020, Plaintiff applied for (and subsequently received) over $1.2 million in PPP loans. *See* Doc. 1-3, at 1071.[1] In March 2022, however, the SBA notified Waterford Bank, NA, Plaintiff's private lender, that Plaintiff's PPP loan qualified for only partial forgiveness. *Id.* at 28–29. Specifically, the SBA determined only $431,338 of the total $1,241,800 in PPP funds loaned to Plaintiff were forgivable pursuant to the CARES Act, as IntelliShop had "miscalculated the loan amount due to the inclusion of ineligible expenses in the form of 1099 employee wages." *Id.* at 28. As a result, Plaintiff was saddled with paying back the remainder of the $1,241,800 PPP loan which the SBA did not forgive. The Parties agree the alleged miscalculation to which the SBA referred stemmed from Plaintiff's inclusion of payments to independent contractors as part of its "payroll costs" when applying for the PPP loan. (Doc. 20-1, at 2); (Doc. 1, at 4–5).

Plaintiff claims, and Defendants do not dispute, it relied on certain unspecified "[e]ligibility documents" issued under the CARES Act when it included independent contractor expenditures as part of its payroll costs in connection with its PPP loan application. *See* Doc. 1, at 3; Doc. 1-1. Contrary to this initial guidance, the SBA adopted an interim final rule ("IFR"), made effective April 15, 2020, which specified a small business's expenditures on independent contractors would not qualify as "payroll costs" under the CARES Act. *See* Doc. 1, at 4 (citing 85 Fed. Reg. 20811, 20813 (April 15, 2020)). The IFR's exclusion of independent contractor expenditures from payroll

---

1. The relevant facts of this case are not in dispute, and both Parties' summary judgment briefing cites to the administrative record as reproduced in Plaintiff's Complaint. *See, e.g.*, Doc. 20, at 6–7; Doc. 24, at 3–4. Additionally, Plaintiff's Complaint is verified, meaning the Court is free to consider it as an uncontested affidavit to the extent Defendants do not object to the veracity of its factual assertions. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

costs then formed the basis for the SBA's aforementioned decision to partially deny forgiveness for Plaintiff's PPP loan. *Id.* at 4, 8. After unsuccessfully appealing the denial to the SBA's Office of Hearing and Appeals, Plaintiff commenced the present suit. *Id.* at 6.

Originally, Plaintiff brought three substantive claims along with a request for the remedy of a declaratory injunction. *See id.* at 6–11. Those substantive claims included: (1) an Administrative Procedure Act ("APA") claim alleging the SBA retroactively applied the independent contractor exclusion to Plaintiff's PPP loan contrary to the IFR's own non-retroactivity provision (Count I); (2) an APA claim alleging the IFR is itself "not in accordance" with the CARES Act, as it unlawfully "impose[d] additional eligibility criteria for PPP loans or forgiveness" when it excluded independent contractor payments from payroll costs (Count II); and (3) an APA claim alleging the SBA's adoption and application of the IFR constituted an arbitrary and capricious act (Count III). *See id.* at 6–10. Now, Plaintiff seeks to amend its Complaint to add a fourth substantive claim for "equitable estoppel." *See* Doc. 25-1, at 11. Under this new theory, Plaintiff claims Defendants engaged in "affirmative misconduct" by inducing Plaintiff to reasonably rely to its detriment on the eligibility guidance counting independent contractor expenditures as payroll costs and later reversing this position by adopting and retroactively applying the IFR. *See id.* at 11–13. The Court considers each claim according to the procedural mechanism by which it was presented.

## Standard of Review

With respect to Defendants' Motion for Summary Judgment, Federal Civil Rule 56 dictates summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light

most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any factual matter in dispute; the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

With respect to Plaintiff's Motion for Leave to Amend, two separate Federal Civil Rules govern pleading amendments. First, Rule 15 provides that a party may amend its pleading once as a matter of course within 21 days of service of a responsive pleading. Fed. R. Civ. P. 15(a)(1)(B). In all other cases, amendments require the opposing party's consent or the court's leave. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.*; *Brown v. Chapman*, 814 F.3d 436, 442-43 (6th Cir. 2016) ("[T]he rule embodies a 'liberal amendment policy.'") (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)). The factors to consider in determining whether to permit an amendment include: "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. Am.*

*Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001). A district court enjoys "considerable discretion" in determining whether leave should be granted. *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010).

Second, Rule 16's case management schedule, which includes a deadline for amended pleadings, may only be modified for good cause. Fed. R. Civ. P. 16(b)(4). "[W]hen a party seeks to amend its pleadings or join additional defendants after the expiration of scheduling order deadlines, it must show good cause under Rule 16(b)." *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 879 (6th Cir. 2020). Once a scheduling order's deadline passes, therefore, a party must *first* show good cause under Rule 16(b) for the failure to seek leave to amend prior to the scheduling order's deadline before a Court will consider whether amendment is proper under Rule 15(a). *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). The Court must also make a determination of the potential prejudice to the nonmoving party when deciding whether to permit amendment. *Id.*

## DISCUSSION

Leave to Amend

Beginning with Plaintiff's Motion for Leave to Amend, the Court notes the scheduling deadline for filing amended pleadings in this case has passed. The original Case Management Conference in this matter set November 30, 2023, as the deadline to amend pleadings and join parties. *See* Doc. 8. Neither party filed amended pleadings prior to this deadline. On March 1, 2024, the Court held a Discovery Dispute Conference during which it amended only the discovery and dispositive motion deadlines. After an initial round of summary judgment briefing, *see* Docs. 14, 16, 18, the Sixth Circuit docketed an appeal in *Veltor Underground, LLC v. U.S. Small Business Administration*, 143 F.4th 727 (6th Cir. 2025), which raised legal issues materially similar to those presented by the instant case. Accordingly, the Court denied without prejudice Defendants' initial

Motion for Summary Judgment and granted leave to refile such motion 30 days after the Sixth Circuit issued a decision in *Veltor Underground*. After one further extension of this dispositive motion deadline, Defendants filed their renewed Motion for Summary Judgment. (Doc. 20). The Court did not thereafter make any other amendments to the case management deadlines, nor did any party request the Court do so.

The upshot of this scheduling saga is that the deadline to amend pleadings was and continues to be November 30, 2023. Plaintiff does not mention the November 30 deadline in their Motion for Leave to Amend and offers no argument under Federal Civil Rule 16's "good cause" standard. On its own, this omission would provide sufficient grounds on which to deny Plaintiff's Motion, as Plaintiff—the movant seeking amendment—bears the burden to "demonstrate 'good cause' for their failure to comply with the original schedule . . . by showing that despite their diligence they could not meet the original deadline." *Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003). However, given the Parties' joint focus on the applicability of Federal Civil Rule 15, and the question of whether Plaintiff's proposed Amended Complaint would be "futile,", *see* Doc. 29, at 2–5; Doc. 31, at 2–4, the Court exercises its discretion to reach the merits of Plaintiff's proposed claim for equitable estoppel.

"A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). In evaluating the proposed amendment under the 12(b)(6) standard, the court must assess the legal sufficiency of a plaintiff's complaint. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In so doing, the Court must evaluate only whether the plaintiff's factual allegations, accepted as true, state a legally viable claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere legal conclusions, however, are not accepted as true, and sufficiently stating a

claim for relief therefore requires more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The doctrine of equitable estoppel requires Plaintiff to demonstrate and, at this stage of the proceedings, plausibly allege, the Defendants: (1) made a misrepresentation to Plaintiff; (2) Plaintiff reasonably relied on the representation; and (3) Plaintiff suffered some "detriment" as a result of its reliance. *See Mich. Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004) (quoting *Labonte v. United States*, 233 F.3d 1049, 1053 (7th Cir. 2000)). But "the government 'may not be estopped on the same terms as any other litigant.'" *Premo v. United States*, 599 F.3d 540, 547 (6th Cir. 2010) (quoting *Heckler v. Cmty. Health. Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 60 (1984)). Specifically, when asserting equitable estoppel against the Federal Government and its agents, it is insufficient to allege such agents were merely negligent in making a misrepresentation. *See Mich. Exp.*, 374 F.3d at 427 (collecting cases). Rather, Plaintiff must plausibly allege some "affirmative misconduct" on the part of the SBA or another Defendant to maintain a viable claim for equitable estoppel. *Id.* "Affirmative misconduct . . . is an act by the government that either intentionally or recklessly misleads the claimant." *Id.* In the context of advice or guidance provided by Government agents, the Plaintiff must allege the agent deceptively drafted the advice with some intent to mislead. *Id.* at 428 ("[Plaintiffs] admit that they do not believe that the [Government] attorney's loose language was deceptively drafted with malicious intent, and that admission defeats their argument.").

Here, even assuming the guidance documents on which Plaintiff relied constituted a misrepresentation, Plaintiff fails to plausibly allege the Defendants acted with the requisite intent. Plaintiff's proposed amendment alleges the SBA engaged in affirmative misconduct by "issuing

official guidance authorizing independent contractor payments as payroll costs, approving and funding IntelliShop's loan based on that guidance, and later reversing its position." (Doc. 25-1, at 14). But merely misinterpreting the CARES Act by advising small businesses they can include independent contractor expenditures as payroll costs for purposes of obtaining a PPP loan is not "misconduct." *See Fuller v. United States*, 475 F. Supp. 3d 762, 768 (S.D. Ohio 2020) ("It is well settled that providing inaccurate information does not constitute affirmative misconduct unless the government agent provides it deliberately or fraudulently."). Thus, because Plaintiff's Complaint does not contain some plausible allegation the SBA engaged in conduct "ris[ing] to the requisite level of *malfeasance*," not mere misfeasance, Plaintiff's equitable estoppel claim must fall. *Mich. Exp.*, 374 F.3d at 427.

Additionally, as Defendants identify, *see* Doc. 29, at 3, and Plaintiff fails to address in reply, *see* Doc. 31, at 3–4, the Court is without authority to provide the remedy necessitated by the legal basis for Plaintiff's equitable estoppel claim. Plaintiff claims the SBA "should be equitably estopped from denying IntelliShop's PPP loan forgiveness based on the inclusion of independent contractor payments in IntelliShop's payroll costs." (Doc. 25-1, at 14). But estopping the SBA in this manner would, in effect, require the SBA to expend federal funds to forgive a loan from Waterford Bank, NA, which itself included funds destined for Plaintiff's independent contractors. That is, *either* funds appropriated by Congress through the CARES Act and withdrawn from the United States Treasury pursuant thereto, *see* U.S. Const. art. I, § 9, cl. 7, will cover the cost of Plaintiff's loan, *or* Plaintiff will bear such cost itself. As will be discussed further *infra*, the Sixth Circuit held in *Velter Underground* that the CARES Act's appropriation of funds to forgive PPP loans does not apply to loans used to compensate independent contractors. *See Veltor Underground*, 143 F.4th at 730–34. Thus, ordering the SBA to expend funds to forgive the portion

of Plaintiff's PPP loan used to compensate independent contractors would amount to "a money remedy that Congress has not authorized." *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 426 (1990). And ordering the expenditure of funds which Congress has not provided for through an Appropriations Bill such as the CARES Act would contravene the Appropriation Clause's "assur[ance] that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents or the individual pleas of litigants." *Id.*; *see INS v. Pangilinan*, 486 U.S. 875, 883 (1988) ("[C]ourts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law.") (quoting *Hedges v. Dixon Cnty.*, 150 U.S. 182, 192 (1893)).

Accordingly, because Plaintiff's claim for equitable estoppel fails as a matter of law and would not survive a 12(b)(6) motion to dismiss, it is futile.[2] The Court therefore denies Plaintiff's Motion for Leave to Amend.

<u>Summary Judgment</u>

Defendants center their briefing on arguing the Sixth Circuit's *Velter Underground* decision dictates the outcome of Plaintiff's three substantive APA claims. *See* Doc. 20, at 8–11. Plaintiff, for its part, attempts to relitigate the statutory interpretation conducted by the *Veltor Underground* court, spending over half of its argument section presenting arguments already considered (and rejected) by that court. *See* Doc. 24, at 10–14. Only briefly does it attempt to distinguish *Veltor Underground*, arguing the Sixth Circuit was primarily "swayed by the concern that an independent contractor could be the beneficiary of 'double dipping' by receiving his or her own loan and payment from a company that had included independent contractor payments" and that such

2. Further, because the Court denies Plaintiff's Motion for Leave to Amend, it will not consider Plaintiff's proposed remedial requests for injunctive and declaratory relief. *See* Doc. 25-1, at 14; Doc. 1, at 11.

concerns are not at issue in this case. *Id.* at 14–15 (citing *Veltor Underground*, 143 F.4th at 737). Because *Veltor Underground*'s interpretation of the CARES Act precludes relief on Plaintiff's APA claims, Defendants are entitled to summary judgment.

Plaintiff's first two APA claims allege the SBA's "retroactive" application of the IFR to its PPP loan and its adoption of the IFR's exclusion of independent contractor expenditures from "payroll costs" were "agency action[s] . . . not in accordance with law . . . [or] in excess of [the SBA's] statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)–(C). In determining whether an agency action is "not in accordance with law" or otherwise a violation of the statutory authority conferred on the agency, the Court looks to the ordinary meaning of the statute under which the challenger claims the action is unlawful. *See In re MCP No. 185*, 124 F.4th 993, 1001 (6th Cir. 2025) (citing *Gross v. FBL Fin. Servs., Inc.* 557 U.S. 167, 175 (2009). Further, the Court no longer defers to the agency's interpretation of ambiguous federal statutes absent a clear delegation by Congress of interpretive authority to the agency. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394–96 (2024).

Here, the Sixth Circuit definitively determined the CARES Act excludes a small business's expenditures on independent contractors from the "payroll costs" subject to PPP loan forgiveness. *See Velter Underground*, 143 F.4th at 730–34. That determination is binding on this Court and entirely forecloses the possibility that the SBA's adoption of an IFR announcing the same legal conclusion, *see* 85 Fed. Reg. 20811, 20813 (April 15, 2020), is "not in accordance with" or "in excess of" the rules and requirements established by the CARES Act. Accordingly, Plaintiff's second APA claim (Count II) is governed by *Veltor Underground* and Defendants are entitled to summary judgment thereon.

The same is true with respect to Plaintiff's first APA claim (Count I). There, Plaintiff claims the SBA's decision to "retroactively" apply the IFR's independent contractor exclusion to its PPP loan, which it applied for prior to the IFR's adoption, is not in accordance with the IFR's own provision establishing "[t]he rule has no preemptive or retroactive effect." 85 Fed. Reg. 20811, 20813 (April 15, 2020). But Plaintiff misunderstands what law governs the applicability of the independent contractor expenditure exclusion—it is the CARES Act itself, not the IFR. As explained throughout this opinion, *Velter Underground* definitely interpreted the CARES Act to exclude independent contractor expenditures from "payroll costs" and thereby excluded PPP loans used on independent contractor expenditures from forgiveness. And when a court of competent jurisdiction "construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313 n.12 (1994). Thus, in denying forgiveness to Plaintiff for the portion of the PPP loan spent on independent contractors, the SBA merely applied the meaning of the CARES Act as it was since the Act's inception. Neither the SBA nor the Sixth Circuit "retroactively" applied a change in the law first announced by the IFR. The CARES Act presently excludes, and always has excluded, independent contractor expenditures from covered "payroll costs." The IFR merely confirmed the rule established by the text of the CARES Act, and applying such rule to Plaintiff's PPP loan is neither "retroactive" nor "not in accordance" with the IFR, the CARES Act, or any other source of federal law. Defendants are therefore entitled to summary judgment on Plaintiff's first APA claim.

Finally, Plaintiff's third APA claim (Count III) alleges the aforementioned adoption and "retroactive" application of the IFR constitute "arbitrary or capricious" acts. 5 U.S.C. § 706(2)(A). The APA's prohibition on "arbitrary" or "capricious" agency action "establishes a scheme of 'reasoned decisionmaking.'" *Coal. for Gov't Procurement v. Fed. Prison Indus.*, 365 F.3d 435, 475

(6th Cir. 2004) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983)). An agency action will not be set aside under the arbitrary or capricious standard unless "the action had no rational basis or . . . involved a clear and prejudicial violation of applicable statutes or regulations." *Id.* (quoting *McDonald Welding v. Webb*, 829 F.2d 593, 595 (6th Cir. 1987)). In its opposition to Defendants' Motion for Summary Judgment, Plaintiffs do not identify any agency action beyond adopting and applying the IFR to Plaintiff's PPP loan. *See* Doc. 31, at 10–15. And Plaintiff's Complaint does not allege any arbitrary or capricious agency action beyond the SBA's decision to "enact[] a rule excluding independent contractor payments." (Doc. 1, at 10). Having determined these actions comport with the plain text of the CARES Act as interpreted in *Veltor Underground*, and being presented with no other grounds on which to find such actions arbitrary and capricious, the Court finds Defendants are entitled to summary judgment on Plaintiff's third APA claim and, accordingly, their Motion for Summary Judgment in its entirety.[3]

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiff's Motion for Leave to Amend (Doc. 25) be, and the same hereby is, DENIED; and it is

---

3. Because Plaintiff's APA claims fall on the merits, its request for the remedy of a declaratory judgment is moot. The Declaratory Judgment Act does not itself provide a cause of action to enforce the substantive provisions of state or federal law. *See City of Reno v. Netflix*, 52 F.4th 874, 878–89 (9th Cir. 2022); 28 U.S.C. § 2201. Rather, it operates only to provide a unique remedy within the federal system, while "leaving substantive rights unchanged." *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC.*, 571 U.S 191, 199 (2014) (quotation omitted); 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2756 (4th ed. 2008) ("The Act and [Federal Civil Rule] 57 are not jurisdictional. They are procedural only and merely grant authority to the courts to use the remedy in cases over which they otherwise have jurisdiction.").

FURTHER ORDERED that Defendants' Motion for Summary Judgment (Doc. 20), be and the same hereby is, GRANTED.

s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: August 26, 2026